# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| Roy Edward Ford, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| v. | ) | Case No: 14 C 50318 |
| Rockford Board of Education, | ) | |
| *Defendant*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant's motion for summary judgment [120] is granted. This case is closed.

## STATEMENT

Plaintiff, Roy Ford, was an employee of Rockford Public School District #205 until he was terminated in July 2014 based on insubordination. In his pro se "Sixth and Final Amended Complaint," which is the operative complaint in this matter, plaintiff alleges that he suffered from discrimination based on his race, retaliation based on his protected speech, and a hostile work environment, all in violation of Title VII. Currently before the court is defendant's motion for summary judgment.[1] For the following reasons, that motion is granted.[2]

## I. BACKGROUND

Determining the relevant facts of a case is generally straightforward and accomplished by

---

[1] Throughout these proceedings, plaintiff has referred to defendant as "Rockford Board of Education (Rockford School District #205)." The correct entity to be sued under these circumstances is the Board of Education of Rockford Public School District No. 205. See, e.g., Veazey v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227, 2016 IL App (1st) 151795, ¶ 27 (explaining that "a board of education has the power under the School Code to sue and be sued in court proceedings"). In any event, for purposes of this order, the court will simply refer to the Board as "defendant."

[2] In a previous order, the court detailed the lengthy procedural history of this case and noted the ongoing difficulty there has been with deciphering plaintiff's various complaints. Although the court determined that, at its core, plaintiff was raising claims of employment discrimination under Title VII, his most recent complaint also asserts numerous other legal theories. In particular, for each of the three counts, plaintiff alleges a "violation of Civil Rights Act 42 U.S.C. § 1981 (Restoration Act §1991), 42 U.S.C. § 1983, 42 U. S. C. § 1988, Title VI, Title VII of the Civil Rights Act of 1964, 'Opposition Clause', 78 Stat. 257, §704(a), as amended, 42 U. S. C. §2000e-3(a) "anti-retaliation provision', AND violations of First and Fourteenth Amendment Substantive and Procedure Rights." Plaintiff has not explained how any of these alternative legal theories could provide him with any greater relief than what is available under Title VII, and the court finds that these alternative claims fail for the same reasons that his Title VII claims fail. That is, no reasonable jury could find that plaintiff was discriminated against based on his race, suffered from retaliation, or was subjected to a hostile work environment no matter which legal theory he invokes.

reviewing the parties' Local Rule 56.1 statements of material fact and the responses thereto. See Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994) ("[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions."). Because Rule 56.1 serves an important function of "organizing the evidence and identifying disputed facts," the Seventh Circuit has "consistently upheld the district court's discretion to require strict compliance with those rules." Cracco v. Vitran Exp., Inc., 559 F.3d 625, 632 (7th Cir. 2009); see also Wilson v. Kautex, Inc., 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion even though [the plaintiff] is a pro se litigant." (citation omitted)).

In this case, determining precisely what facts are relevant and/or disputed has not been a straightforward task. This is largely due to plaintiff's failure to comply with the procedures outlined in Rule 56.1(b) for responding to defendant's statement of material facts. Rather than provide a "concise response" to each of the paragraphs in defendant's Rule 56.1 statement with "specific references to the affidavits, parts of the record, and other supporting materials relied upon" for any disagreement, plaintiff simply added to or modified the language of defendant's statements to be consistent with his own theory of the case, often with no indication of where defendant's language stopped and his additions began. Indeed, the only way the court was able to determine what facts were allegedly in dispute was to perform a side-by-side analysis of plaintiff's "Facts Disputing Defendants' [sic] Local Rule 56.1 Statement of Material Facts in Support of Defendant's Motion for Summary Judgment" with defendant's "Local Rule 56.1 Statement of Material Facts in Support of Defendant's Motion for Summary Judgment" and highlight the added or modified language in plaintiff's pleading. This is not the normal procedure, and the court was not obligated to undertake such a task. See Gross v. Town of Cicero, Ill., 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record."). Indeed, under these circumstances, the court would have been within its discretion, as defendant suggests in its reply brief, to deem admitted all of the facts asserted in defendant's statement of material facts based on plaintiff's failure to properly comply with Rule 56.1. However, given plaintiff's status as a pro se litigant, as well as the fact that he made some effort to respond to the statement of facts, albeit in an unorthodox manner, the court declines to decide this case based on a procedural deficiency and instead will review the merits of plaintiff's claims.

That being said, in this case the most efficient way to sort through plaintiff's disputes—or his attempted disputes, as the case may be—is to review them within the context of the various claims for relief. Accordingly, for purposes of background information, the court need only relay the following undisputed facts. Plaintiff is an African-American male who was employed by defendant in various positions from August 2006 until June 2011, from September 2011 until June 2012, and from August 2012 until his termination in July 2014. For the 2013-2014 school year, plaintiff was placed in the position of Parent and Community Engagement Specialist at Walker Elementary School where Matthew Lerner was the Principal. In February 2014, plaintiff received a written verbal reprimand from Principal Lerner based on his lack of supervision of a lunch detention in which two students' verbal argument escalated into a physical fight, and he received a

2

second written verbal reprimand from Principal Lerner for not timely reporting two absences.[3]

On May 16, 2014, Walker Elementary School went on a field trip to the zoo, and Principal Lerner told plaintiff that he needed to attend the field trip as part of Walker's staff. Plaintiff told Principal Lerner that he was not going on the field trip because he felt it was unsafe. That same day, plaintiff was suspended with pay pending the results of an investigation into plaintiff's refusal to attend the field trip. On July 28, 2014, plaintiff attended a meeting regarding his suspension with Principal Lerner; Anthony Wilson, who was plaintiff's direct supervisor; and human resources staff. After hearing from plaintiff regarding his refusal to attend the field trip and considering plaintiff's prior work history, including the two write-ups from February 2014, plaintiff was recommended for termination due to insubordination arising out of his refusal to go on the field trip. On August 12, 2014, defendant approved the termination for insubordination.[4]

## II. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 818-19 (7th Cir. 2015). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. See Preddie, 779 F.3d at 812-13. However, "inferences relying on mere speculation or conjecture will not suffice." Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009). "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 951 (7th Cir. 2013) (emphasis omitted).

### A. Count I – Racial Discrimination

In Count I, plaintiff alleges that he was discriminated against based on his race in violation of Title VII. "With such a claim, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." Barbera v. Pearson Educ., Inc., 906 F.3d 621, 628 (7th Cir. 2018); see also David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508, 846 F.3d 216, 224 (7th Cir. 2017) ("[T]he test is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action.").

In this case, the parties have organized their arguments under the terms of the familiar

---

[3]Although plaintiff does not believe that those reprimands were justified, he does not dispute the fact that the discipline was imposed.

[4]Although not focused on as much by the parties, plaintiff was also terminated based on insubordination for refusing to leave the building on May 16, 2014, after Principal Lerner told him to go home if he was not going to attend the field trip. This additional fact has no impact on the court's analysis and need not be discussed further.

3

McDonnell Douglas burden-shifting framework. Although the Seventh Circuit has recently "overruled a line of . . . cases separating discrimination claims into 'direct' and 'indirect' categories and assigning different legal standards to each," Ferrill v. Oak Creek-Franklin Joint Sch. Dist., 860 F.3d 494, 499 (7th Cir. 2017) (citing Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765-66 (7th Cir. 2016)), "[n]othing in Ortiz . . . displaced the burden-shifting analysis established in McDonnell Douglas," id.; see also Barbera, 906 F.3d at 629 ("[W]e left McDonnell Douglas burden-shifting as a viable option for pursuing employment discrimination claims."); David, 846 F.3d at 224 ("[B]oth before and after Ortiz, McDonnell Douglas is a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases."). Accordingly, the court will evaluate the evidence under the McDonnell Douglas approach while keeping in mind that "all evidence belongs in a single pile and must be evaluated as a whole." Ortiz, 834 F.3d at 766.

To establish a prima facie case of racial discrimination, plaintiff must show that (1) he is a member of a protected class, (2) his job performance met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) one or more similarly-situated individuals outside his protected class were treated more favorably. Ferrill, 860 F.3d at 500. If plaintiff can make this prima facie showing, the burden would shift to defendant to come forward with a legitimate, nondiscriminatory reason for the challenged employment action, after which the burden would shift back to plaintiff to establish a genuine dispute of fact about whether defendant's reason was a pretext for discrimination. Id. In its motion for summary judgment, defendant argues that plaintiff cannot establish a prima facie case of racial discrimination. The court agrees.

In this case, there is no dispute that plaintiff can meet the first element of his prima facie case because he is a member of a protected class. Defendant also concedes that plaintiff's termination was an adverse employment action.[5] Defendant argues, however, that plaintiff cannot show that he

---

[5]In his briefing, plaintiff appears to argue three additional adverse employment actions. Although plaintiff does not need to establish more than one adverse employment action for purposes of his prima facie case, the court will briefly review these additional claims for the sake of completeness. First, plaintiff asserts that he was removed from his position as a basketball coach at Kennedy Middle School for the 2011-2012 school year, but this allegation is untimely and cannot form the basis for relief on this claim. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002) ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e-5(e)(1)."). Second, plaintiff contends that he was "refused a phone, refused a properly working computer, and refused a printer" when he first started at Walker, all of which interfered with his work. Even assuming for the sake of argument that plaintiff's lack of proper equipment was the result of racial animus (although there is no evidence to support such a claim), these inconveniences do not rise to the level of an adverse employment action. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (explaining that an adverse employment action requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); Ortiz, 834 F.3d 760 ("We have noted, however, that not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit."). Finally, plaintiff argues that the two reprimands he received in February 2014 should not have been given and constitute adverse employment actions, but "written reprimands without any changes in the terms or conditions of his employment are not adverse employment actions." Lloyd v. Swifty Transp., Inc., 552 F.3d 594, 602 (7th Cir. 2009); see also Sweeney v. West, 149 F.3d 550, 556 (7th Cir. 1998) ("At most Sweeney has documented instances in which she was unfairly reprimanded for conduct she either did not engage in or should not have

was meeting his employer's legitimate expectations or that other similarly-situated individuals outside his protected class were treated more favorably.

In its motion, defendant argues that plaintiff's insubordination for refusing to attend the field trip to the zoo shows that he was not meeting the legitimate expectations of his employer at the time of his termination. In general, an employee is "not meeting [his] employer's legitimate expectations if [he] was insubordinate." Everroad v. Scott Truck Sys., Inc., 604 F.3d 471, 478 (7th Cir. 2010); see also Zayas v. Rockford Mem'l Hosp., 740 F.3d 1154, 1158 (7th Cir. 2014) (noting that an "analysis of an employer's legitimate expectations . . . consider[s] factors such as insubordination"); Williams v. Airborne Exp., Inc., 521 F.3d 765, 768 (7th Cir. 2008) ("Airborne already had disciplined him three times (twice in the previous year) and still he was insubordinate again, so he could not show that he was meeting Airborne's legitimate job expectations."). In this case, there is no dispute that plaintiff refused to go on the field trip even though Principal Lerner told him that he needed to attend. Under these circumstances, plaintiff cannot show that he was meeting the legitimate expectations of his employer. See, e.g., Hodges v. Pointer, No. 06 C 2269, 2007 WL 528366, at *5 (N.D. Ill. Feb. 14, 2007) ("Hodges admits that he was fired for what Pointer subjectively believed to be insubordination. . . . Thus, Hodges has failed to show that he was meeting the legitimate expectations of the District."); Ulmer v. Bob Watson Chevrolet, Inc., No. 97 C 7460, 1999 WL 1101332, at *4 (N.D. Ill. Nov. 29, 1999) ("Plaintiff has presented no evidence to dispute defendant's claim that he was insubordinate, and admits in his deposition testimony to many of the insubordinate actions of which he is accused. . . . In short, plaintiff does not create a question of fact about whether he was meeting the employer's legitimate expectations.").

As noted above, plaintiff acknowledges that he did not follow Principal Lerner's directive to attend the field trip. Plaintiff contends, however, that this cannot actually amount to insubordination because Principal Lerner was not his supervisor, and he was never told by his "direct supervisor" that he needed to attend the field trip. As an initial matter, it is not the court's role to determine whether a plaintiff has been insubordinate or second-guess this determination by the employer. See Coleman v. Donahoe, 667 F.3d 835, 862 (7th Cir. 2012) ("In adjudicating claims under federal employment discrimination statutes, a court does not sit as a super-personnel department, second-guessing an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation."). Nevertheless, plaintiff's argument that Principal Lerner was not his supervisor is actually belied by the evidence submitted by plaintiff himself.

In support of his argument, plaintiff points to the letter informing him of his placement at Walker Elementary School for the 2013-2014 school year. That letter indicates that "Matthew Learner [sic] is the principal and your supervisor is Vicki Jacobson, Assistant Superintended [sic] of Schools. As her designee, Anthony Wilson, Parent & Community Liaison, will be your direct

---

been responsible for. Absent some tangible job consequence accompanying those reprimands, we decline to broaden the definition of adverse employment action to include them.").

5

supervisor and concerns or questions should be directed to him."[6] Although it may imply as much, this letter does not explicitly state that Principal Lerner is one of plaintiff's supervisors. However, any question as to Principal Lerner's role in supervising plaintiff was clarified in an email dated October 11, 2013, from Anthony Wilson in which he instructed plaintiff that "[b]oth Mr. Lerner and I are your supervisors. Mr. Lerner is your immediate supervisor as you are in his building. . . . If there is a problem or a concern that you have taken to Mr. Lerner first and if he cannot help you solve it, then you may bring it to me." Accordingly, at the time plaintiff failed to follow Principal Lerner's directive to attend the field trip, he knew that he was being insubordinate to one of his supervisors. As a result, he cannot show that he was meeting his employer's legitimate expectations at the time of his termination.

In his response, plaintiff also tries to justify his refusal to go on the field trip by claiming that it was unsafe because students "were told and lead to believe that they did not have to listen to [plaintiff]." Plaintiff does not support this claim with anything other than his own speculation, which is not sufficient to defeat a properly supported motion for summary judgment. See Stephens, 569 F.3d at 786 (noting that "inferences relying on mere speculation or conjecture will not suffice"). Moreover, even if plaintiff's fear was legitimate, that does not change the fact that he refused a direct order by Principal Lerner to attend the field trip and was insubordinate by doing so. See Bruno v. City of Crown Point, Ind., 950 F.2d 355, 364 (7th Cir. 1991) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Finally, plaintiff briefly contends that he could not have been insubordinate because defendant has no clear insubordination policy. This argument is without merit. Although defendant has not directed the court to any policy which defines "insubordination" specifically, defendant's personnel policy defines misconduct as "any failure to follow any oral or written directive, order or Board of Education policy or that of any supervisor." Regardless of the label used to define this policy, it is clear that defendant had a legitimate expectation that its employees would follow the orders of "any supervisor." By refusing to attend the field trip after being told that he had to go by Principal Lerner—one of his supervisors—plaintiff was not meeting his employer's legitimate expectations. For all these reasons, plaintiff cannot meet the second element of his prima facie case of discrimination.

Plaintiff also fails to satisfy the fourth element of his prima facie case because he has not shown any similarly-situated individuals that were outside of his protected class and treated more favorably. "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them." Barbera, 906 F.3d at 629; see also Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002) ("To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects."). In

---

[6] Plaintiff also submitted an email from Angel Contreras, Chief Human Resources Officer, to Matthew Parker, Director of Athletic Activities & Program Development, which indicated that Anthony Wilson was plaintiff's "immediate supervisor." This email is consistent with the placement letter.

6

determining whether another employee is similarly-situated to the plaintiff, "[c]ourts should apply a flexible and factual, common-sense approach." Luster v. Ill. Dep't of Corr., 652 F.3d 726, 730 (7th Cir. 2011). "The question is whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis." Id.

Here, plaintiff has not identified any similarly-situated employees who were treated more favorably than him despite their own insubordination. Plaintiff attempts to meet his burden by pointing to a white secretary from West Middle School who, in August 2014, made a rude gesture towards her principal but received only a written discipline for her conduct. This other employee is not similarly situated to plaintiff for a number of reasons. First, she was not dealing with the same supervisor as plaintiff, as she was employed at a different school under the direction of a different principal. Second, unlike plaintiff, her conduct, while certainly insubordinate, occurred in front of staff and had no potential bearing on the students. Third, and perhaps most importantly, the secretary was covered by a collective bargaining agreement that required certain progressive disciplinary steps be taken prior to a termination, whereas plaintiff was an at-will employee who could be terminated for any reason at any time. Given all of these differences, a review of this other employee's conduct would not allow a reasonable jury to infer that plaintiff's termination was the result of racial discrimination.

Plaintiff also attempts to rely on a "white administrator" who "refused work while alleging he 'feared for his safety'" but was not terminated. In support of this alleged similarly-situated employee, plaintiff cites to his complaint, which normally would be an insufficient method for contesting a summary judgment motion. In this case, however, because plaintiff's complaint is signed under penalty of perjury, it is considered a verified complaint and can be used at summary judgment. See Beal v. Beller, 847 F.3d 897, 901 (7th Cir. 2017) ("[A] verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion."). That being said, the cited portion of the complaint[7] does not establish that this white administrator was similarly situated to plaintiff. Indeed, there is no evidence to indicate that plaintiff and this allegedly similarly-situated employee dealt with the same supervisor, were subject to the same standards, or engaged in similar conduct. It is not even clear that this white administrator was even insubordinate to anyone, as opposed to merely delegating

---

[7]Paragraph 31 of plaintiff's Sixth and Final Amended Complaint states:
The two African-American males that were my co-workers and I were routinely ordered to perform duties that were duties assigned to decision-makers and administrators only (not support administrators), but we were required to perform the duties anytime "white" decision-makers and administrators stated that they were not going to perform the duties for fear for their safety while going into the predominately African-American communities [forced to perform duties specifically authorized for decision-makers and administrators whenever they stated that the African-American community was a danger to their safety – EX: Bill Robertson (Assistant Principal) and others]. I performed the duties (in what they consider to be hostile White or African-American communities) for the best interest of the students and the parents, and while off the clock I openly and clearly (with community support groups) informed the community about the "public concerns" of the discrimination against African-Americans (students, parents, staff, and applicants).

7

some of his duties to other staff members. Accordingly, no reasonable jury could infer discrimination based on a comparison with this white administrator.

Based on the foregoing, plaintiff cannot establish two of the elements of his prima facie case because he was not meeting his employer's legitimate expectations at the time of his termination and he has not shown any similarly-situated employees outside of his protected class that were treated more favorably. Therefore, plaintiff is unable to establish racial discrimination through the McDonnell Douglas framework, and no reasonable jury, considering all the evidence presented, could find for plaintiff on this claim. Accordingly, defendant's motion for summary judgment is granted as to Count I of the complaint.

### B. Count II – Retaliation

In Count II, plaintiff alleges that defendant retaliated against him based on his "publicly open and legally protected speech about the Defendant's . . . repeated and continuing . . . discrimination against African-American staff and students." In order to survive summary judgment, plaintiff has to "offer evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." Baines v. Walgreen Co., 863 F.3d 656, 661 (7th Cir. 2017). A retaliation claim requires "proof that the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013). Plaintiff can "supply the causal link through circumstantial evidence from which a jury may infer intentional discrimination." Baines, 863 F.3d at 661; see also Abrego v. Wilkie, 907 F.3d 1004, 1015 (7th Cir. 2018) ("In the Title VII retaliation context, causation can be established by circumstantial evidence, which includes, for example, suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently.").

Plaintiff does not specify in his complaint what protected activity he claims led to the alleged retaliation by defendant in this case. In its motion for summary judgment, defendant has made efforts to identify, based on plaintiff's discovery responses, three internal complaints that could form the basis for plaintiff's retaliation claim—(1) a September 2013 complaint regarding his computer and other office equipment; (2) an October 2013 complaint regarding coaching; and (3) a July 2014 complaint seeking further information regarding his suspension with pay—but argues that none of these constitute protected activity.[8] Although his response and exhibits are not well-organized, it appears that plaintiff has identified three additional "letters" that he sent via email to various Board members and other administrators of the school district in which he complains about a variety of perceived racial injustices.[9] It is difficult to say whether any of these communications were

---

[8]Defendant also identified a set of complaints that were made to external agencies and/or made after plaintiff was terminated. The court agrees with defendant that these types of complaints were unknown to defendant at the time of plaintiff's termination, and therefore, could not be used to support plaintiff's retaliation claim.

[9]By way of example, in his third "letter" dated February 22, 2014, plaintiff stated, among other things:
I am again humbly and respectfully writing this letter to Rockford School District #205 Board Members and decision making administrators after multiple attempts to legally stop and correct every Racially Motivated Attack, Retaliation, Attempted Intimidation, Racial Bullying, Racial Cronyism And Nepotism (so-called word-of-mouth), Attempted Genocidal Extermination of me and other African-American males and females Instructors and Mentors from #205 School District, failure and

8

sufficient to put defendant on notice that plaintiff was engaging in statutorily protected activity. See Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1147 (7th Cir. 1997) (concluding that "generalized complaints" do not establish the protected activity element of a retaliation claim). Nevertheless, construing all inferences in favor of plaintiff as the non-moving party, the court finds that plaintiff has, at a minimum, identified a genuine issue of material fact on this element of his retaliation claim.

That being said, plaintiff has failed to identify any evidence from which a reasonable jury could find that there is a causal connection between any of this potential protected activity and his termination, which qualifies as a materially adverse action. Plaintiff has not pointed to any direct evidence showing that one or more of his complaints was the "but-for cause" of the decision to terminate his employment. See Nassar, 570 U.S. at 352. As a result, plaintiff attempts to rely on circumstantial evidence to support his retaliation claim, see Abrego, 907 F.3d at 1015, but no reasonable jury could find the necessary causal connection between plaintiff's complaints and his termination in this case.

One type of circumstantial evidence of retaliation is suspicious timing between the protected activity and the adverse employment action. See id. In this case, however, none of these complaints identified by the parties in their briefing demonstrates suspicious timing, as most of these occurred several months or more before the termination. The only complaint that was somewhat close in time was from July 2014, but this was after plaintiff had already been suspended with pay on account of his insubordination. In any event, "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter. Rather, a short gap may permit a plaintiff to survive summary judgment only if there is also other evidence that supports the inference of a causal link." Id. (citations omitted); see also Kidwell v. Eisenhauer, 679 F.3d 957, 966 (7th Cir. 2012) ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action."). As explained below, there is no other evidence to support the inference of a causal link between plaintiff's post-suspension complaint and his eventual termination. Accordingly, plaintiff cannot support his retaliation claim based on the timing between his alleged protected activity and his termination.

Causation can also be established through circumstantial evidence showing that defendant offered a pretextual explanation for the termination. See Abrego, 907 F.3d at 1015. As discussed above, there is no dispute that plaintiff was insubordinate when he refused Principal Lerner's directive to go on the field trip, and this was the stated reason for his termination. Plaintiff has not presented any evidence to suggest that this reason was false or pretextual. See Butler v. Fed. Whalen Moving & Storage, L.L.C., 1 F. App'x 505, 508 (7th Cir. 2001) ("Butler cannot prevail on his claim of retaliatory discharge. Even if Butler could establish a prima facie case, he submitted no evidence showing that Donohue did not honestly believe him to be insubordinate, and thus cannot show that

---

> refusal to hire (40+ years) qualified African-Americans, unlawful discharges of qualified African-Americans, constructive discharges of qualified African-Americans, and Unjust/Unequal/Unpredictable Treatments because of my race and to teach me and other African-Americans to stay in our place[.]

Whalen's reasons for firing him were pretextual," (citing Sanchez v. Henderson, 188 F.3d 740, 746 (7th Cir.1999)); see also Milliman v. Cty. of McHenry, 893 F.3d 422, 431 (7th Cir. 2018) ("We have repeatedly emphasized that when assessing a plaintiff's claim that an employer's explanation is pretextual, we do not second-guess an employer's facially legitimate business decisions. An employer's reasons for firing an employee can be foolish or trivial or even baseless, as long as they are honestly believed."). Accordingly, plaintiff cannot establish a retaliatory motive by arguing that the stated reason for his termination was pretextual.

Another way that a plaintiff can establish a claim for retaliation through circumstantial evidence is to point to similarly-situated employees that were treated differently, thereby suggesting that the protected activity was the but-for cause of the termination. See Abrego, 907 F.3d at 1015. However, as discussed above, plaintiff has not shown any other employees that were similarly situated to him but treated more favorably by defendant. Accordingly, plaintiff cannot establish his claim of retaliation through circumstantial evidence of similarly-situated employees.

Based on the foregoing, the court concludes that no reasonable jury could find in favor of plaintiff on his claim of retaliation, as there is no evidence to establish that plaintiff's alleged protected activity was the but-for cause of his termination. Accordingly, defendant's motion for summary judgment is granted as to Count II of the complaint.

### C. Count III – Hostile Work Environment

In Count III, plaintiff alleges that he was subjected to a hostile work environment on account of his race in violation Title VII. "To survive summary judgment on this claim, [plaintiff] must present evidence sufficient for a reasonable jury to find that (1) the environment was both subjectively and objectively offensive; (2) the harassment he suffered was based on his membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." Poullard v. McDonald, 829 F.3d 844, 859 (7th Cir. 2016). In its motion for summary judgment, defendant argues that judgment should be entered in its favor on this claim because plaintiff failed to exhaust his administrative remedies. The court agrees.

"Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges to the EEOC." Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 550 (7th Cir. 2002); see also Reynolds v. Tangherlini, 737 F.3d 1093, 1099-100 (7th Cir. 2013) ("In Title VII cases, the scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges."). Here, plaintiff's charge of discrimination alleged that he was "discriminated against because of [his] race, Black, and in retaliation for engaging in protected activity, in violation of Title VII." There is no mention of a hostile work environment or any specific allegations of severe or pervasive conduct which could have been construed as a hostile work environment claim. Indeed, the only specific complaints plaintiff made in his charge of discrimination is that he was "having necessary work supplies withheld" and that he was "disciplined and suspended on or around May 16, 2014." These specific allegations of disparate treatment purportedly based on plaintiff's race and in retaliation for his protected activity are insufficient to raise a claim for hostile work environment. See, e.g., Reynolds, 737 F.3d at 1100 (concluding that the plaintiff had failed to exhaust his retaliation claim where he

had "failed to provide minimally adequate factual specificity to allow the EEO office to conduct an investigation"); Rush v. McDonald's Corp., 966 F.2d 1104, 1111-12 (7th Cir. 1992) (affirming dismissal of racial harassment claim where plaintiff included a specific race discrimination claim in her charge but failed to include any reference to racial harassment). Accordingly, plaintiff is precluded from raising a hostile work environment claim is this case, and defendant's motion for summary judgment is granted as to Count III of the complaint.[10]

### III. CONCLUSION

Based on all these reasons, defendant's motion for summary judgment is granted as to all counts in plaintiff's complaint.

Date: 1/28/2019

ENTER:

_____

FREDERICK J. KAPALA

District Judge

---

[10] Defendant also argues that, even if plaintiff exhausted his administrative remedies, his hostile work environment claim also fails on the merits because he cannot establish severe or pervasive discriminatory conduct that created a hostile or abusive working environment. Given the foregoing analysis on exhaustion, the court need not reach this alternative argument.